# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| FRANK CHAPMAN, SAMUEL LOMAX and CECIL MORTON, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 4:05-cv-2334-TCM ) |
| SAMUEL J. SIMON and GENE STUBBLEFIELD, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER AND MEMORANDUM

This matter is before the Court upon the applications of Frank Chapman (registration no. C1698826), Samuel Lomax (registration no. C135259) and Cecil L. Morton (registration no. C1888273), prisoners at the St. Louis City Justice Center, for leave to commence this action without payment of the required filing fee [Docs. 10, 12 and 14]. For the reasons stated below, the Court finds that the applicants do not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $14.40 for plaintiff Chapman, $34.88 for plaintiff Lomax and $4.44 for plaintiff Morton. *See* 28 U.S.C. § 1915(b)(1).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1) a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account; or (2) the average monthly balance in the prisoner's account for the prior six month period. See 28 U.S.C. § 1915(b)(1). After payment of the initial partial filing fee, the prisoner is required to make

monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. *See* 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id*.

Applicant Chapman has submitted an affidavit and a certified copy of his prison account statement for the six month period immediately preceding the submission of his complaint. *See* 28 U.S.C. § 1915(a)(1),(2). A review of applicant Chapman's account statement indicates an average monthly deposit of $72.00, and an average monthly account balance of $48.56. Applicant Chapman has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee against Chapman of $14.40, which is 20 percent of applicant Chapman's average monthly deposit.

Applicant Lomax has submitted an affidavit and a certified copy of his prison account statement for the six month period immediately preceding the submission of his complaint. *See* 28 U.S.C. § 1915(a)(1),(2). A review of applicant Lomax's account statement indicates an average monthly deposit of $39.33, and an average monthly account balance of $174.39. Applicant Lomax has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee against Lomax of $34.88, which is 20 percent of applicant Lomax's average monthly balance.

Applicant Morton has submitted an affidavit and a certified copy of his prison account statement for the six month period immediately preceding the submission of his complaint. *See* 28 U.S.C. § 1915(a)(1),(2). A review of applicant Morton's account statement indicates an average monthly deposit of $22.06, and an average monthly account balance of $22.19. Applicant Morton

has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee against Morton of $4.44, which is 20 percent of applicant Morton's average monthly balance.

**28 U.S.C. § 1915(e)**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis at any time if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief may be granted if it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070 (1979).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 112 S. Ct. 1728, 1733 (1992); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

**The complaint**

Plaintiffs seek injunctive relief and monetary damages, pursuant to 42 U.S.C. § 1983, for alleged violations of their constitutional rights. Named as defendants are Samuel J. Simon, (Director, City of St. Louis, Department of Public Safety) and Gene Stubblefield (Superintendent, Medium Security Institution & City Justice Center ("MSI")). Plaintiffs allege that their constitutional

rights are violated by the following conditions of confinement at MSI: overcrowding; lack of exercise; inadequate heat and ventilation; deficient diet and inadequate preparation of food; restricted visitation privileges; denial of the right to practice their religion; lack of a separate facility for juvenile prisoners; and lack of separation of prisoners by security classification.

## Discussion

The Court must address the following threshold issues before considering plaintiffs' allegations: 1) whether any of the defendants may be found liable given the lack of specific allegations against any defendant and 2) whether any of plaintiffs' allegations must be dismissed because they are assertions of the rights of third parties rather than of plaintiffs themselves.

### A. Personal involvement.

The Court notes that plaintiffs allege no specific facts as to how a named defendant violated his rights. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). The question then arises whether either defendant may be held liable for the alleged violations of plaintiffs' constitutional rights. Clearly, defendant Simon may not be held liable on the basis of his status as the Director of the St. Louis Department of Public Safety, nor may defendant Stubblefield be held liable on the basis of his status as MSI superintendent. *See Glick v. Sargent*, 696 F.2d 413, 414-15 (8th Cir. 1983) (per curiam) (respondeat superior theory inapplicable in § 1983 suits). However, "chief executive officers of penal institutions, such as '[a] prison warden can be held liable for policy decisions which create unconstitutional conditions.'" *Reutcke v. Dahm*, 707 F.Supp. 1121, 1134 (D.Neb.1988) (quoting *Martin,* 780 F.2d at 1338; *Ouzts v. Cummins,* 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam). Similarly, both the director of the

government department that is charged with management of the MSI and the MSI superintendent may be held liable for policy decisions that create unconstitutional conditions. The Court cannot discredit the possibility that defendants Simon and Stubblefield were responsible for the policy decisions that created the conditions alleged by plaintiffs to be unconstitutional. *See id.* Because defendants' roles are unknown, the Court finds that they may be proper defendants in this matter. Accordingly, the Court will consider plaintiffs' claims as to defendants Simon and Stubblefield.

**B.	Asserting the legal rights of third parties.**

To the extent that plaintiffs seek to litigate the rights of other inmates, the general rule is that a litigant must assert his own legal rights and cannot assert the legal rights of a third party. *See U. S. v. Raines*, 362 U.S. 17, 22-23, 80 S.Ct. 519 (1960); *Tileston v. Ullman*, 318 U.S. 44, 46, 63 S.Ct. 493 (1943). Plaintiffs have no standing to assert the constitutional rights of other prisoners. *Id*. None of the plaintiffs has alleged that he is a juvenile offender. Accordingly, the Court will dismiss, without prejudice, plaintiffs' claim regarding the lack of a separate facility for juvenile prisoners.

**C.	Conditions of confinement.**

**1.	Overcrowding.**

Plaintiffs assert that Dorm 1 has twenty-nine beds, spaced approximately three feet apart. Plaintiffs state that there are always about eighteen more people than there are beds, such that forty-five to forty-seven people are housed in a space that is meant to house twenty-nine. Plaintiffs state that there are eight face bowls and three toilets to accommodate the inmates in Dorm 1.

In *Campbell v. Cauthron*, 623 F.2d 503 (8th Cir. 1980), the Eighth Circuit found that jail overcrowding violated prisoners' due-process rights. *Campbell,* 623 F.2d at 506-07. In

*Campbell*, the Court concluded that providing an inmate with only eighteen square feet of living space constituted cruel and unusual punishment. *Id.* at 506. Here, plaintiffs allege that individual living space is twenty-one square feet when only twenty-nine inmates are housed in Dorm 1 and that currently there are an additional eighteen inmates housed there. Plaintiffs should be given the opportunity to show that the overcrowding of which they complain evidences a violation of their constitutional rights. Accordingly, plaintiffs' complaint as to this issue survives review under § 1915(e)(2)(B) and should not be dismissed at this time.

### 2. Lack of exercise.

Plaintiffs allege that they are allowed approximately two hours a week of indoor exercise and no outdoor exercise. To prevail on a claim alleging deprivation of adequate exercise, plaintiffs must show that the prison officials were deliberately indifferent to their exercise needs. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2323-24 (1991). "Courts in the Eighth Circuit have held that at least one hour of exercise outside the cell each day is required in order to comply with the eighth amendment." *Andrews v. Gunter*, 1987 WL 54372, *3 (D.Neb.1987) (citing *Hutchings v. Corum,* 501 F.Supp. 1276, 1294 (W.D. Mo.1980); *Campbell,* 623 F.2d at 507)). Plaintiffs allege that they are allowed only two hours of exercise a week, which does not meet the constitutional minimum. Accordingly, plaintiffs' complaint as to this issue survives review under § 1915(e)(2)(B) and should not be dismissed at this time.

### 3. Inadequate heat and ventilation.

Plaintiffs allege that there is poor ventilation in the dorms and cell blocks and that, in the winter months, the heat is rarely adjusted for changes in temperature. At this early stage of review, the Court concludes that inadequate ventilation and exposure to extremes of temperature may

6

constitute threatened and actual health hazards that may violate plaintiffs' constitutional rights. Accordingly, plaintiffs' complaint as to this issue survives review under § 1915(e)(2)(B) and should not be dismissed at this time.

### 4. Deficient diet and inadequate preparation of food.

Plaintiffs allege that the food served to them is often half-cooked and is never served hot. Plaintiffs state that the food is not served directly from the steam table and is allowed to sit in trays long enough for the food to become contaminated. Prison officials must provide a nutritionally adequate diet. *Divers v. Dep't of Corrections*, 921 F.2d 191, 194 (8th Cir. 1990). Plaintiffs' complaint, however, contains no allegation that the food served to them was "nutritionally inadequate or prepared in a manner presenting an immediate danger to [their] health, or that [their] health suffered as a result of the food." *Wishon v. Gammon*, 978 F.2d 446 (8th Cir. 1992) (finding no Eighth Amendment violation where food was alleged to be cold and contaminated with foreign objects). Additionally, plaintiffs' allegation regarding possible contamination of food sitting on trays is too speculative to warrant relief because plaintiffs do not allege that they were ever made ill by the food served to them. Accordingly, plaintiffs' complaint as to this issue does not survive review under § 1915(e)(2)(B) and should be dismissed at this time.

### 5. Restricted visitation privileges.

Plaintiffs allege that they are allowed only one hour's visitation a week. The Court recognizes that "visitation rights are 'rights' with respect to which the Supreme Court has given broad discretionary authority to administrators in order to manage the prison." *Bumgarner v. Bloodworth*, 768 F.2d 297, 301 (8th Cir. 1985) (citing *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869 (1983), *overruled on other grounds, Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293 (1995)).

"Visitation is a privilege and within the correctional facility's province to administer as it sees fit." *Burke v. Rudnick*, 2000 WL 33339652, *3 (D.N.D. 2000).

However, as the district court in *White Eagle v. Storie*, 456 F. Supp. 302 (D.Neb. 1978), concluded, the conditions of visitation "...are simultaneously fundamental to institutional security and to inmate morale." *White Eagle*, 456 F.Supp. at 305. "When the two are in conflict, the need for security is paramount; but the need must be supported by the evidence, and the doctrine of least necessary restraint requires, as a matter of due process that jail visiting conditions be curbed only to the extent needed to assure institutional security and administrative manageability." *Id*. (citing *Rhem v. Malcolm*, 371 F.Supp. 594, 625 (S.D.N.Y. 1974). Restricting visitation to one hour a week may be warranted, but the Court will require defendants to respond to plaintiffs' complaint and show that plaintiffs' visitation rights are not unconstitutionally restricted. Accordingly, plaintiffs' complaint as to this issue survives review under § 1915(e)(2)(B) and should not be dismissed at this time.

**6.     Denial of the right to practice their religion**.

Plaintiffs assert that only five prisoners from Dorm 1 are allowed to attend religious services at any given time. Liberally construing plaintiffs' complaint, it appears that plaintiffs are alleging a First Amendment free exercise of religion claim based on the prison's refusal to accommodate group worship. The threshold issue is whether the alleged refusal to accommodate group worship rights "infringes upon a sincerely held religious belief...." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004) (*citing Hamilton v. Schriro,* 74 F.3d 1545, 1550 (8th Cir.1996)). "Whether or not group worship is a sincerely held religious belief is a factual determination...." *Id*. (*citing Ochs v. Thalacker*, 90 F. 3d 293, 296 (8th Cir. 1996). While the decision not to allow group worship may be rationally connected to the prison's legitimate interest

in safety and security, and there may exist sufficient alternative means for plaintiffs to practice their faith without group worship, *see Turner v. Safley*, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 2262 (1987), the Court will require defendants to respond to plaintiffs' complaint and show that plaintiffs' free-exercise rights are not unconstitutionally restricted. Accordingly, plaintiffs' complaint as to this issue survives review under § 1915(e)(2)(B) and should not be dismissed at this time.

### 7. Lack of separation of prisoners by security classification.

Plaintiffs allege that there is no separation of prisoners according to security classification. The Court is unable to determine what constitutional right plaintiffs here assert. While required to give the complaint a liberal construction, the Court is not required to supply additional facts or construct a legal theory for plaintiff that assumes facts that have not been pleaded. *See Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988). Plaintiffs have not alleged a sufficient factual basis to support a finding that their constitutional rights were violated based on their allegation that prisoners are not separated according to security classification. Accordingly, plaintiffs' complaint as to this issue does not survive review under § 1915(e)(2)(B) and should be dismissed at this time.

### D. Motions to amend.

Plaintiffs have filed two motions to amend complaint [Docs. 4, 7]. This Court does not permit amendment by interlineation. Where, as here, plaintiffs wish to amend their complaint, they must re-plead and reassert all of their allegations and claims against all defendants. An amended complaint then supercedes and replaces all prior complaints. Accordingly, the Court will deny plaintiffs' motions to amend complaint.

In accordance with the foregoing,

**IT IS HEREBY ORDERED** that the application of plaintiff Chapman to proceed in forma pauperis [Doc. 14], the application of plaintiff Lomax to proceed in forma pauperis [Doc. 12] and the application of plaintiff Morton to proceed in forma pauperis [Doc. 10] be **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Chapman shall pay an initial partial filing fee of $14.40 within thirty (30) days from the date of this order. Plaintiff Chapman is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff Lomax shall pay an initial partial filing fee of $34.88 within thirty (30) days from the date of this order. Plaintiff Lomax is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff Morton shall pay an initial partial filing fee of $4.44 within thirty (30) days from the date of this order. Plaintiff Morton is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiffs' motions to amend complaint [Docs. 4, 7] be **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint.

              /s/ Thomas C. Mummert, III
              THOMAS C. MUMMERT, III
              UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of February, 2006.